## SPENCE *v.* HARVEY *et al.*

ANY contract by a public officer which interferes with the unbiassed discharge of his duty to the public in the exercise of his office, is against public policy and void.

A postmaster is a public officer, and in the discharge of his trust is bound to exercise his judgment for the public benefit in fixing the location of his office, and any contract by which this exercise of his judgment is sold for his private emolument, interferes with the discharge of his official duties and is therefore void.

The question of the validity of a contract of a public officer does not depend upon the circumstance, whether it can be shown that the public has in fact suffered any detriment, but whether the contract is such in its nature as might have been injurious to the public interest.

The plaintiff in expectation of receiving a commission as postmaster entered into an agreement with defendants, whereby they leased to him certain premises for the term of one year, with the right on his part to extend the terms so

Spence *v.* Harvey.

long as he should remain postmaster not exceeding four years, in considera-
tion of the sum of one dollar per year, and a covenant on his part, that as
soon as he received his commission he would remove the post-office to the
leased premises, and continue the same there for all the time that he should
hold the office : *held,* that, in an action for the breach of this contract by
defendant, it contravened public policy and was void.

If in order to secure a fit location for an office it should be necessary for a post-
master to agree to locate and continue it at a particular place, a contract to
that effect might be valid, but to maintain an action thereon such necessity
would be required to be affirmatively shown.

APPEAL from the Eleventh Judicial District.

The facts are stated in the opinion of the Court.

*H. O. & W. H. Beatty,* for Appellant, contended, that the
contract sued on was against public policy and void, and cited :
(*Parsons* v. *Thompson,* 1 Henry Blackstone, 322; 5 Holstead,
87; *Simon* v. *Chorpening,* 20 Cal. 182.)

*S. W. Sanderson,* for Respondent.

This contract violates no statute of this State nor any law of
Congress. If then the contract is illegal, it must be because the
respondent has agreed to do some act which is in violation of his
duty, as postmaster, to the public. What duty, which the post-
master owes to the public, has the respondent by this contract
agreed to violate or neglect ? It is his duty to locate and conduct
the office in such a manner as to conduce to the public convenience.
He must locate it in a place reasonably safe, convenient, and acces-
sible to the community who are to be accommodated at the office.
But no where, in the record of this case, is it made to appear that
the respondent did not perform all these duties.

The postmaster is bound to provide himself with an office, and if
he is compelled to rent one, he contracts for it in his own name and
upon his own credit, and not in the name of the Government or
upon its faith and credit. The lessor looks to the postmaster for
his pay, and has no claim whatever upon the Government. The
postmaster contracts to pay and is bound to pay, and in the pres-
ent instance has paid, the rent out of his own pocket. Such then
being the case, what rule of law or principle of ethics debars us

from the right to exercise the brains, which God has given us, in making for ourselves the best contract we can. No rule of law or principle of ethics requires us to pay sixty dollars for that which is voluntarily offered to us for one, by persons who are neither drunk, nor insane, nor infants, nor married women. It cannot be said that the respondent was to be paid for doing his duty. His duty required him to provide a suitable and convenient office, and there his duty to the public—so far as the present question is concerned—ended. The terms upon which he provided the office, were a matter in which the public had no interest, and which concerned himself and his lessors only. Having performed his whole duty to the public, in the location of his office, he had the same right to look after his own interest in arranging the terms as any other provident and prudent man. But it has been said that the rent is allowed to us by the Government out of the proceeds of the office, and therefore if we win this case we are enabled to make a profitable speculation out of the transaction. Admit this, for the sake of the argument, and we ask, off from whom do we speculate? Certainly not the public, nor the Government, but the appellants. The respondent has made a contract in which neither the public nor the Government had any interest, or were in any manner affected thereby, much less prejudiced.

Chitty, in his work on Contracts (p. 575), speaking of contracts affecting public policy, says: " An agreement is not void on this ground, unless it expressly and unquestionably contravene public policy, and be manifestly injurious to the interests of the State." If then, it be doubtful whether an agreement is or is not against public policy, the Court must give the agreement the benefit of the doubt, and hold it valid.

In *Richardson* v. *Mellish* (2 Bingham, 242, 9 Eng. Com. Law, 563), Best, C. J. said: " On such grounds (public policy) we are not to presume corruption. Corruption is to be made out. * * * I am not much disposed to yield to arguments of public policy. I think the Courts of Westminster Hall, * * have gone much further than they were warranted in going in questions of policy; they have taken on themselves, sometimes, to decide doubtful questions of policy. * * * * I therefore say it is not a doubt-

ful matter of policy that will decide this, or that will prevent the party from recovering; if once you bring it to that (doubt) the plaintiff is entitled to recover  *   *   *  ."

We have then—stating the case most favorably for the appellants—a contract supported by a strictly legal consideration, to wit, one dollar per annum, which the complaint avers was paid, and the answer does not deny the averment, and another consideration the legality of which is doubtful. Under the law then as declared by Chitty, and Best, C. J.—and they are uncontradicted by other authorities—the respondent has beyond all question a legal cause of action, and, other things permitting, ought to recover.

NORTON, J. delivered the opinion of the Court—COPE, C. J. and CROCKER, J. concurring.

This action is brought to recover damages claimed to have been sustained by the plaintiff, by reason of a breach of a covenant for quiet enjoyment contained in a lease executed by the defendants to the plaintiff. The action was tried by the Court without a jury, and upon the findings of fact a judgment was rendered for the plaintiff, from which the defendants appeal.

The facts in brief are these : The plaintiff, in expectation of receiving a commission as postmaster of Placerville, entered into an agreement with the defendants whereby they leased to him certain premises for the term of one year, with the right on his part to extend the term so long as he should remain postmaster, not exceeding four years, in consideration of the sum of one dollar per year, and his agreement to locate and continue the post-office on the premises so leased ; and he on his part covenanted that as soon as he received his commission he would remove the post-office to the leased premises, and continue the same there for all the time he should hold the office of postmaster, and not remove the same during or within that time. He, in pursuance of the agreement, removed the post-office to the leased premises, but after a certain time they, by collusion and fraud, caused him to be evicted under a paramount title, to wit, by willfully refusing to pay the rent on a lease under which they held, and instigating their landlord to evict the tenants in consequence of such rent not being paid. The value

of the rent or use of the premises was seven hundred and twenty dollars a year. The judgment was for $1,058 40, being the amount of this value of the lease, less the sum of one dollar a year, from the time of eviction, on the seventeenth day of January, 1860, to the seventh day of October, 1861, at which time he ceased to be postmaster.

The defendants insist, among other things, that the contract on which the action is brought is against public policy and void. We think this defense is well taken.

It is not disputed but that contracts against public policy are illegal and void; but the plaintiff insists that the contract in question is not of that character.

" Public policy " is a vague expression, and few cases can arise in which its application may not be disputed. Mr. Story, in his work on Contracts (Sec. 546), says: " It has never been defined by the Courts, but has been left loose and free of definition, in the same manner as fraud. This rule may, however, be safely laid down, that wherever any contract conflicts with the morals of the time and contravenes any established interest of society, it is void, as being against public policy." In illustration of this rule, he says (Sec. 576): " Where, therefore, a person occupying a public office agrees, for a reward, to exercise his official influence in questions affecting both public and private rights so as to bring about the private advantage of persons interested, the contract would be void. For every public officer is bound to be disinterested in the consideration of all public questions, and any contract which interferes with the free and unbiassed exercise of his judgment in relation to a question of trust or confidence reposed in him, is against public policy and good morals." " Again (Sec. 577): Contracts for the sale of public offices come under this class of contracts in violation of public duty and are void. And this rule obtains upon the ground that they tend to destroy the responsibilities of the office, and to betray the interests of the public." " So, also, the profits and emoluments of a public office of trust are not a good subject of sale. Thus it has been held, that the prize money of a sailor, or the full pay or half pay of an officer is not assignable at law, nor in equity, upon the ground that any salary paid for the

performance of a public duty ought not to be perverted to other uses than those for which it was intended." These citations are made, not as referring to cases of the same exact character as the one before us, but as illustrating the general principle—which is, that any contract by a public officer which interferes with the unbiassed discharge of his duty to the public in the exercise of his office is against public policy, and is void.

The office of postmaster is a public office and is established for the benefit of the public. In the discharge of his duties the plaintiff was bound to locate the post-office and to continue it at a place suitable and reasonably convenient for the use of the public. In the discharge of this trust he was bound to exercise his judgment for the public benefit, and any contract by which this exercise of his judgment was sold for his private emolument, interfered with the proper discharge of his duties as a public officer. By this contract, in consideration of a gain to himself of seven hundred and nineteen dollars a year, he obligated himself to keep the post-office at a particular spot during the term of his office. He thus, for a consideration, contracted to conduct the business of his office, in one particular, in a stipulated manner. He was not free to exercise his judgment for the public benefit. However unsuitable the location might become he was under an obligation, if the contract is valid, not to change it.

It is said that this particular contract is not against public policy, because in fact the place selected was suitable and convenient for the public use. The question of the validity of the contract does not, however, depend upon the circumstance, whether it can be shown that the public has in fact suffered any detriment, but whether the contract is in its nature such as might have been injurious to the public, and which public policy requires should not be made by public officers in regard to the discharge of their duties. Upon this point the case of *Fuller* v. *Dame* (18 Pick. 472), is pertinent. In that case, it appears that Fuller was a stockholder in the Boston and Worcester Railroad Corporation, and for a consideration he agreed to use his influence in procuring that corporation to locate its depot at a particular place in Boston, it being expressed in the agreement that Fuller was of the opinion that the road ought,

from a view to the public good and the good of the stockholders, to locate its depot at that place. The contract was held to be void on the ground that the road was established for the public accommodation, although a private corporation, and that the public had an interest in the question of the location of the depot, and that though the contract was not made to induce a party to do an unlawful act, it put him under an influence to do that which might injuriously affect the interests of the public, and the Court say : " Nor is it any satisfactory answer to say that when the agreement was entered into, he had come to the opinion that the location in question was the best for the interests of the public and for the interests of the corporation. That opinion might be changed by new views and new offers ; and besides, the terms upon which this boon was to be obtained, was still an open question. But upon all these questions the influence of the promise of separate and distinct advantage deprived him of the power of exercising a free, disinterested, and unbiassed judgment."

It may be said that the benefits derived to a vicinity by the location of a post-office are an inseparable incident of the business of the office, and if a person owning property finds it for his interest and chooses, in order to secure the locating of the post-office in the vicinity of his property, to rent an office for a less sum than it might be rented for some other use, there is no wrong to the public in the postmaster availing himself of this incidental benefit to himself, just as on the contrary, if the locating of the post-office should be considered a detriment to the vicinity, he might be compelled to encounter the necessity of paying a higher rent than the office was worth for some other use. It may also be said that it might, in some cases, be necessary for the postmaster to engage to continue the office for a certain time in a particular locality in order to obtain a suitable office, by affording a compensation for changes in a building or in the business arrangements of the landlord. Undoubtedly these considerations must be estimated, in deciding whether any particular contract is against public policy, and in particular cases they may be sufficient to determine that a contract containing such a stipulation is not void, and there would have been more difficulty in saying that the present contract was void if it had been a simple

lease for a definite term, though at a nominal rent.   The postmaster would still have been at liberty to change the locality if the public interest required it, and in making such a contract the parties might take into consideration the probability of the post-office being continued at the selected location ; and this probability might, and doubtless would, depend upon the suitableness of the location, and thus the public interest would not be affected.   But in this case the postmaster, for a large consideration to himself, has sold the right of locating the post-office for an indefinite period, so long as he holds the office, reserving to himself no power to change it if the public interest should require it, and where no circumstance appears making it necessary to have made such a contract.   We think it clear that public policy requires that a public officer should not bind himself as to the mode of discharging his duties by such a contract, under such circumstances ; that, by a just and reasonable application of the general rule, this contract is void, and that no facts or circumstances are shown to exist which would take the case out of the general rule.

The judgment is therefore reversed, and the Court below is directed to render a judgment for the defendants.