WELLS, FARGO & CO., Respondent, v. JOSEPH ENRIGHT et al., Defendants.  COMMERCIAL AND SAVINGS BANK, Appellant.

STATUTE OF LIMITATIONS—AGREEMENT NOT TO PLEAD THE STATUTE—EXECUTION BY BANK—AUTHORITY OF PRESIDENT—SUPPORT OF FINDING.— Where an agreement not to plead the statute of limitations was executed in the name of a bank by its president, evidence that the president was the general manager of the bank, having general power under its by-laws to manage its affairs, and to perform all duties which its interests may require, when not limited by its by-laws, or by express instructions from the board of directors, and that the president and vice-president thought the execution· of the agreement was for the best interest of the bank, is sufficient to support a finding that the bank executed the agreement.  The fact that the president signed it as such and not also as manager, is immaterial.

ID.—CONSIDERATION OF AGREEMENT—FORBEARANCE TO SUE.—Where the agreement not to plead the statute of limitations expressed on its face that the promise was made in consideration of a promise by the creditor to refrain from instituting suit for the period of six months, before the expiration of which the bar of the statute would otherwise attach, though it had not attached at the date of the agreement, and the plaintiff forebore to sue for that period of time, such forbearance and suspension ·of the plaintiff's right to sue is a valuable consideration for the agreement.

ID.—VALIDITY OF AGREEMENT—WAIVER OF PERSONAL PRIVILEGE—ESTOPPEL—PUBLIC POLICY.—An agreement not to plead the statute of limitations is a mere agreement to forego a personal privilege secured to the debtor by statute, which the debtor may waive, and such agreement may operate to estop him from a defense of the statute.  Such agreement is not opposed to any public policy, but is, on the contrary, a valid agreement which sound morals require should be enforced.

ID.—REASONABLE LIMITATION.—It seems to be a reasonable limitation to allow an action to be brought after such an agreement at any time within the period of statutory limitation dating from the agreement.

CORPORATIONS—LIABILITY OF STOCKHOLDERS—INTEREST—PRESUMPTION.— The stockholders of a corporation are liable for their proportion of the whole of the debt of the corporation, including the interest, which is as much a part of the debt as the principal; and a loan of money to the corporation is presumed to be upon interest, unless it is otherwise expressly stated at the time in writing.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion.

Jackson Hatch, and Jesse W. Lillienthal, for Appellant.

E. S. Pillsbury, and F. D. Madison, for Respondent.

CHIPMAN, C.—Action to enforce the liability of the defendant Commercial and Savings Bank and others as stockholders in the Shasta Lumber Company. All the defendants, except appellant, paid their proportionate shares of the debt before the trial, and as to them the action was dismissed. Defendants pleaded the statute of limitations. Plaintiff had judgment, from which and from an order denying motion for new trial this appeal is prosecuted.

Appellant states in its brief that the only question arising on the appeal involves its plea of the statute of limitations, except a question, also raised, as to the liability to pay interest. The questions presented all revolve around a certain agreement in writing alleged by plaintiff to be a waiver of the statute of limitations. A fair summary, together with a *verbatim* copy of certain parts of this agreement, is as follows: "This agreement, made this twenty-seventh day of January, A. D. 1896, by the undersigned with Wells, Fargo & Co., a banking corporation, having an office in the city and county of San Francisco, state of California, witnesseth"; recites that the undersigned were, on January 30, 1893, stockholders in the Shasta Lumber Company in the number of shares stated; recites the indebtedness of the lumber company to plaintiff on that day; recites a still further indebtedness contracted April 21, 1893, and still other indebtedness at later dates in that year not necessary to state here: "Whereas, said Wells, Fargo & Co. are about to commence suit against the undersigned to recover the *pro rata* amount due from each of them to said company on account of said indebtedness as stockholder of said Shasta Lumber Company, and the undersigned desire to delay such suit; now, therefore, to the end that said Wells, Fargo & Co. do refrain, for six months from date hereof, from instituting suit against the undersigned on

account of their liability as stockholders in said Shasta Lumber Company, for the indebtedness hereinbefore stated, the under-. signed, and each of us, promise and agree with said Wells, Fargo & Co., in consideration that it will forbear the enforcement of the collection of said sums by suit against us for said period of six months from date, that in the event of any action being commenced thereafter to recover our proportionate shares of such indebtedness, we and each of us will not plead the statute of limitations to such action.   Witness our hands the day and year aforesaid."   Then follow the signatures of several stockholders, defendants, and number of shares of each stated opposite each name, and immediately thereafter the document continues as follows:

"The Commercial and Savings Bank does not admit that it is a stockholder in said Shasta Lumber Company, but simply held the stock as collateral security.   It waives the statute of limitations as to any stock that may be proved to belong to said bank.

"THE COMMERCIAL AND SAVINGS BANK, San Jose,

"By B. D. MURPHY,

"President.

"An extension of six months is granted pursuant to the foregoing agreement.                    HOMER S. KING,

"Manager Wells, Fargo & Co."

The complaint was filed March 27, 1897, fourteen months after the agreement was made.   The oldest liability accrued January 30, 1893, and the agreement was made January 27, 1896, three days before the statute would have barred the remedy.   It is admitted that appellant was a stockholder as alleged in the complaint.

Appellant relies upon the bar of section 359 of the Code of Civil Procedure, and claims that the agreement in question is not such a one as to take the case out of the operation of the statute and as is referred to in section 360 of the Code of Civil Procedure.   It is further claimed that the defendant bank did not sign the agreement; that it is without consideration, and whether it be considered as executed by appellant or not, it indefinitely suspends a right to plead the statute, and is therefore void, because contrary .to public policy.   Some other points are

made by appellant, but they depend upon the foregoing; for example, that a mere waiver to plead the statute is not a waiver under all circumstances that may afterward arise, and that the agreement does not operate as an estoppel.

1. Did appellant execute the agreement? The evidence tended to show that Murphy, who signed for appellant, was the president and manager of appellant at the time, and had been for many years previously; that during this time the entire management of the bank was left to Murphy and to the vice-president, Findlay, in the president's absence; and that the directors had allowed them to act upon their own judgment and as they thought best for the interests of the bank, and that it was not customary to report their actions to the directors, nor to ask ratification thereof, nor to first obtain special authority before performing particular acts relating to general business; and that this had been the course of business permitted by the directors since 1889; that the acts of the president had never been questioned by the directors; in short, the evidence tended to show that Murphy, as president and manager, had been allowed to do pretty much as he pleased in managing the affairs of the bank. There was a by-law of the bank reading as follows: "The manager shall be the general agent of the corporation and of the board of directors, and, as such agent, shall have a general supervision of the business of the corporation. . . . . He shall have power to cancel all mortgages or other instruments under seal, taken as security for indebtedness due the bank, and perform all other duties which the interests of the corporation may require, limited only by the by-laws and the express instructions of the board of directors." The evidence was that both Murphy and Findlay thought the agreement was in the best interest of the bank, but that the directors were never called upon to authorize or ratify it, nor does it appear that they knew of its execution. The evidence justified the finding of the court that the agreement was entered into by appellant. (*McKiernan v. Lenzen,* 56 Cal. 61; *Greig v. Riordan,* 99 Cal. 316; *Los Angeles etc. v. Los Angeles,* 106 Cal. 156.) The fact that Murphy signed the agreement as president and not also as manager is immaterial. (*Los Angeles etc. v. Los Angeles, supra.*)

2. Appellant contends that the agreement was without consideration, citing *Shapley v. Abbott,* 42 N. Y. 447, 1 Am. Rep.

548, *Andrew v. Redfield*, 98 U. S. 225, and *Kellogg v. Dickinson*, 147 Mass. 432, in the last of which cases there was indorsed on a promissory note the following: "Paid on the within note ten dollars, and agree that I will not take any advantage of the statute of limitations"; and the agreement was held invalid for want of consideration. In the first two cases cited the promise was verbal, and there was no agreement on the part of the creditor; and in the last case the creditor made no promise to delay action. Here the agreement was in writing, and expressly states a consideration. Plaintiff promised to and did forbear suit for six months. As was stated in *Belloc v. Davis*, 38 Cal. 256, "it is well settled that forbearance to sue is a sufficient consideration· to support a contract." What may constitute a valuable consideration "may be the surrender, suspension, or forbearance of a legal right to process for the enforcement of the collection of the debt." (*Frey v. Clifford*, 44 Cal. 335, 341.)

3. Was the agreement such as can be said to be opposed to public policy? Judge Story said, in *Vidal v. Girard*, 2 How. 127, 197: "What is the 'public policy' of a state, and what is contrary to it, if inquired into beyond what its constitution, laws, and judicial decisions make known, will be found to be matter of great vagueness and uncertainty, and to involve discussions which scarcely come within the range of judicial duty and functions, and upon which men may and will differ."

This court sustained an agreement entered into between the nephews and the testator in her lifetime not to contest her will (*In re Garcelon*, 104 Cal. 570; 43 Am. St. Rep. 134), as against the plea that the contract was opposed to public policy. It was pointed out in that case that a contract is not to be arbitrarily set aside as void as being against public policy. The right to plead the statute of limitations is but a privilege, and in no manner extinguishes the debt, and no debtor is under any obligation to the state or toward third persons to plead it, except as in the case of administrators and executors, trustees, and perhaps some others acting in representative capacities, where the law imposes the duty. This court has shown by its decisions that it attaches no great sanctity to this privilege, for where the party failed to plead the statute, and afterward sought to do so by amendment of its answer, and the trial court refused.

to allow the amendment, the ruling was upheld as a power properly exercised, for the reason that the amendment could not be said to be in furtherance of justice. (*Bank of Woodland v. Heron,* 122 Cal. 107, and cases there cited.) There is not wanting a legislative expression as to the wisdom of withholding the privilege altogether in certain cases; for example, depositors in savings banks to recover a deposit (Code Civ. Proc., sec. 348), an action against a director of a corporation for misfeasance in office (Civ. Code, sec. 309); nor are judicial opinions lacking as to the right, as between the parties, to waive or prolong the statute of limitations. (*Smith v. Lawrence,* 38 Cal. 24; 99 Am. Dec. 344; *Wood v. Goodfellow,* 43 Cal. 185.) The direct question has not been answered by this court so far as we have been able to discover. We have no hesitation, however, in holding that the agreement before us violates no principle of public policy, but, on the contrary, was one which every consideration of sound morals requires us to enforce.

It was said in *State Trust Co. v. Sheldon,* 68 Vt. 259: "The question presented by the pleadings is whether the defendants are estopped by their agreement from pleading the statute of limitations in bar of plaintiff's action. It is urged that the agreement to waive the statute is void because, by private agreement, it seeks to avoid a statute, and is against public policy. The general rule is, that no contract or agreement can modify a law, but the exception is that, where no principle of public policy is violated, parties are at liberty to forego the protection of the law. Statutory provisions designed for the benefit of individuals may be waived, but, where the enactment is to secure general objects of policy or morals, no consent will render a noncompliance with the statute effectual. The statute limiting the time within which action shall be brought is for the benefit and repose of individuals, and not to secure general objects of policy or morals. Its protection may, therefore, be waived in legal form, by those who are entitled to it; and such waiver, when acted upon, becomes an estoppel to plead the statute." (Citing numerous cases to the same effect.) We think this a correct statement of the law.

The supreme court of the United States regarded such an agreement as operating by way of estoppel *in pais* to a defense

under the statute of limitations. (*Randon v. Toby*, 11 How. 493.) Respondent cites cases from the District of Columbia, Maine, South Carolina, Vermont, Texas, Mississippi, New Jersey, Tennessee, and New York. We find that they support its position. See, also, Wood on Limitations, section 76, where it is stated that if the promise be made before the debt is barred, and in consideration of forbearance to sue and the creditor forbears, "it is binding upon the debtor, and at least has the effect to keep the debt on foot until the statutory period, dating from such promise, expires, either by way of estoppel or as a conditional promise to pay the debt in case the plaintiff proves it." Conceding that some of the cases cited by appellant tend to support its contention, they do not convince us that there is any rule or principle of public policy violated by an agreement to waive the statute of limitations under the circumstances here disclosed. It is probably true that after an agreement to waive the statute has been entered into, in consideration of forbearance to sue, the courts would place some limit of time beyond which the statute would not be suspended. In the case of 147 Massachusetts, cited by appellant, the action was brought after forty years. Some of the cases, as Mr. Wood does, place this limit within the statutory period, dating from the agreement, and this seems to be a reasonable limitation. But we are not called upon to decide, and do not decide any further than that in our opinion the present action was brought in time.

4. Appellant is liable for interest. Section 322 of the Civil Code makes the stockholders liable for their proportion of the debt of the corporation. Interest was as much a part of the debt as the principal of the notes, which constituted most of the indebtedness (*Knowles v. Sandercock*, 107 Cal. 629); and as to the sums loaned by plaintiff to the lumber company, as money had and received, there is a presumption that it was upon interest, "unless it is otherwise expressly stipulated at the time in writing." (Civ. Code, sec. 1914.)

The judgment and order should be affirmed.

Haynes, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.