[Civ. No. 585.   Third Appellate District.—May 7, 1909.]

ALBERT W. COX, Respondent, v. A. S. HUGHES et al., Appellants.

ASSIGNMENTS OF FUTURE WAGES—EXISTING AND FUTURE EMPLOY-MENTS—LEGAL SUFFICIENCY.—As respects the legal sufficiency of assignments of future wages, all future wages to be earned under an existing employment may be assigned for a valuable considera-tion or as security for subsisting indebtedness, without regard to the terms of such existing employment; but no past assignment is legally sufficient to carry the wages to be earned in a distinct fu-ture employment by a different employer, and no action at law will lie to enforce the same.

ID.—LEGAL EFFECT OF POWER OF ATTORNEY.—A power of attorney to assign the wages of an existing and of any future employment, though coupled with an interest, cannot be legally operative during an existing employment, to warrant the assignment of any distinct future employment which cannot be coupled with any legal interest prior to its actual existence.

Id.—Nature of Power Coupled with Interest.—A power coupled with an interest must be an interest in the thing itself, and must be grafted on an estate in the thing; and the power and interest must be united in the same person.

Id.—Revocation of Power of Assignment to Pay Debt—Payment Required.—A power of attorney to assign wages to pay a subsisting debt, when coupled with an interest in a subsisting employment, cannot be revoked during such employment without payment of the debt.

Id.—Honest Debt for Money Advanced—Written Agreement Binding in Equity.—A written agreement based upon an honest debt for money advanced, the benefit of which was received from confidence reposed, evidences a moral obligation, which is binding in equity, and a court of equity will not aid in its repudiation.

Id.—Revocation After Assignment by Agent Under New Employment—Suit in Equity—Payment of Debt Essential.—Where the power of attorney to make assignments for the subsisting indebtedness was not revoked until more than ten months had expired after the new employment had commenced, and until after the donee of the power had made assignments of his wages thereunder toward the debt, the wage-earner cannot thereafter maintain a suit in equity to cancel the power of attorney and to restrain the agent from making further assignments, without an offer to pay the subsisting debt.

Id.—Maxim of Equity.—The payment of the subsisting debt follows, under the circumstances, from the familiar maxim of equity jurisprudence that he who seeks equity must do equity.

Id.—Protection in Equity of Assignments of Possible Interests Taking Effect in Future.—Notwithstanding the contrary rule at law, courts of equity will support assignments contracted for not only of contingent interests and expectancies, but also of things which have no present actual or potential existence, but rest in mere possibility; not, indeed, as a present positive transfer operating *in praesenti*, but as a present contract to take effect and attach as soon as the thing comes *in esse*.

Id.—Contract to Assign Private Wages to be Earned Under Future Employment not Against Public Policy.—A contract to assign private wages to be earned under a future employment for an adequate consideration is not against public policy, and becomes operative in equity, when the subject matter of such wages becomes existent, and an authorized assignment thereof contracted for has been made. The rule that assignments of future wages of public officers is against public policy has no application.

Id.—Improper Orders upon Demurrers.—The plaintiff being entitled to no relief in equity, it was error to overrule a demurrer to the com-

plaint, and the answer having set forth an equitable defense to the action, it was error to sustain a demurrer to the answer, and the judgment is reversed with leave to amend the complaint.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Berry & Brady, for Appellants.

Albert A. Rosenshine, for Respondent.

BURNETT, J.—The complaint alleges that on or about the second day of January, 1906, plaintiff executed a certain written instrument, which is set forth in the complaint and which is designated, and in fact is, a power of attorney. Therein the defendant, A. S. Hughes, was authorized, among other things, ''to fill in, execute or complete, any sale or assignment of wages or salary, claim or demand now due or to become due me from any future employer, person, firm or corporation, to the extent of my indebtedness to the said Star Loan Company, which said sale or assignment may date from the time of my said new employment, in case I should engage my services to other than my present employer; to execute, alter, change, fill in or complete, any form as he may see fit, any contract, sale or assignment of wages, drafts, orders, bills of exchange, executed by me to, with or for the Star Loan Company to which I am indebted, upon any person, firm or corporation, in whose service I now am or shall at any time be engaged for any amount that I shall at any time be indebted to the said Star Loan Company. . . . It being distinctly understood and agreed that this power of attorney shall be irrevocable, the same being coupled with an interest while I shall in any wise be and remain indebted to the Star Loan Company or its assigns, on any contract, and I hereby grant to my said attorney full power of substitution hereby ratifying for myself and representatives whatever my said attorney shall do by virtue of the powers and privileges granted by these presents.''

It is further alleged that at said time plaintiff signed a large number of blank instruments purporting to be assignments to defendant, the Star Loan Company, as well as powers of

attorney, the instruments so signed being set out in the complaint. That defendant Hughes did on August 1, 1907, change, alter and fill in one of the said assignments by inserting in the blanks therein the name of the employer, "Newman & Levinson, Sutter and Van Ness Avenue City," the term of employment, "the weeks ending August 3rd, 10th, 17th, 24th, and 31st, 1907," and in addition thereto inserted and filled in "August 1st, 1907." The instrument so filled in is set out in full in the complaint. That on said January 2, 1906, plaintiff was in the employ of the Emporium and entered the employment of Newman & Levinson on the fifth day of October, 1906, where he was working at the time the defendant Hughes filled in the blank instrument and at the time the complaint was filed. That on the fifteenth day of August, 1907, plaintiff revoked the power of attorney and filed the revocation in the county recorder's office. That defendant Hughes refuses to recognize the revocation. Plaintiff therefore prays for an order restraining defendant Hughes from exercising any power under said power of attorney, directing that said instrument be canceled and that the Star Loan Company be restrained from acting under any of the said assignments. Defendants demurred to the complaint and their demurrer was overruled. They filed an answer in which they alleged that at the time of the execution of said power of attorney from plaintiff to Hughes, the said plaintiff executed and delivered to defendant, the Star Loan Company, two promissory notes, one for $120, the other for $207; that thereafter he executed two other notes; that the aggregate amount due on those notes is $336 and interest, and that since the execution of said power of attorney plaintiff has been continuously indebted to the Star Loan Company on said notes; that defendant Hughes is, and was at all times mentioned in the complaint, the general manager of said company in the state of California, and that the power of attorney and assignments were given by plaintiff to secure the payment of the notes.

Plaintiff demurred to this answer upon the ground that it failed to state facts sufficient to constitute a defense. The demurrer was sustained and judgment was entered for plaintiff as prayed for, from which judgment the appeal is taken.

The main points of controversy may be presented as follows: Respondent, in the first place, insists that we are dealing

with a power of attorney which attempts to assign wages and salary to become due from any future employer by virtue of contracts of employment not in existence at the date of the execution of the alleged power of attorney, and that such an attempt is illegal and void as against public policy.

Appellants admit that an assignment of wages to be earned in the future where there is no existing contract of employment is invalid because the assignor has no present interest, but they claim that there was an existing contract, and therefore that the possibility of obtaining such future earnings, though contingent and liable to be defeated, was coupled with an interest, and hence it was a vested right.

Among the cases cited by respondent in support of his contention, which may be taken as fairly illustrative of all, is *Lehigh V. R. Co.* v. *Woodring*, 116 Pa. 522, [9 Atl. 61], wherein it is said: "The attempt was to assign that which had no existence, either substantial or incipient. There was no foundation or contract on which an indebtedness might arise. It was the mere possibility of a subsequent acquisition of property. This is too vague and uncertain. It cannot be sustained as a valid assignment and transfer of property." The case was an action at law brought by the creditor to recover on the assignment; and as the assignment did not transfer the mere possibility it was rightly held that there was no sufficient basis for the suit.

On the contrary, when there is an existing employment the rule is as stated in American and English Encyclopedia of Law, volume 2, page 1031: "An assignment of wages or salary to be earned under an existing employment made in good faith and for a valuable consideration is valid. It is immaterial, in such a case, that the assignor works from day to day, and is hired for no specified time or that he works by the piece, and his wages per month vary, or that he is removable at any time."

Indeed, we have the same principle enunciated in the provisions of the Civil Code. Section 1044 provides that "property of any kind may be transferred, except as otherwise provided by this article"; and section 1045: "A mere possibility, not coupled with an interest, cannot be transferred."

The chance that A may be employed some time in the future by B and thereby earn wages is, of course, a mere possibility not coupled with an interest and it does not possess the ele-

ment of negotiability. But if the employment already exists, the wages to be earned from such employment, although a mere possibility, is coupled with an interest in A and therefore assignable under the code and the authorities. The proposition is so obvious as to require no further exposition.

In the light of the foregoing it is· clear that at the time of the execution of the said power of attorney by plaintiff he had no assignable interest in the wages or salary that he might thereafter earn from his employment by Newman & Levinson. Appellants are entirely mistaken in their contention that an existing employment by the Emporium changes the rule as to Newman & Levinson. It is the wages or salary that may be earned from the existing employment that can be assigned for the reason stated. But an existing employment can be no support for the assignment of what may possibly be earned from some other employment.

If plaintiff could not legally assign the wages to accrue from a possible employment by Newman & Levinson, it must follow that he could not authorize anyone else to make such assignment. This will not be disputed. Hence, if we were only concerned with the question of the legal sufficiency on said January 2, 1906, of the assignment or of the power of attorney attempting to authorize said assignment of said wages, the conclusion would be irresistible that respondent's position must be upheld.

Some other questions, however, demand attention.

The revocation of said power of attorney is said also by respondent to justify the court's conclusion. Herein is a sharp issue between the parties involving the power of revocation. It is agreed that as a general rule the principal may revoke the authority of his agent so far as it relates to things concerning which the agency has not been executed, but that an exception exists where, as provided in section 2356 of the Civil Code, the power of the agent is coupled with an interest in the subject of the agency. As to the meaning of ''a power coupled with an interest,'' Chief Justice Marshall has this to say in *Hunt* v. *Rousmanier's Admrs.*, 8 Wheat. (U. S.) 174: ''A power coupled with an interest must be an interest in the thing itself. The power must be engrafted on an estate in the thing. The power and interest are united in the same person. The interest or title in the thing being vested in the person who gives the power, remains in him unless it be con-

veyed with the power and can pass out of him only by a regular act in his own name.''

In *Norton* v. *Whitehead,* 84 Cal. 270, [18 Am. St. Rep. 172, 24 Pac. 156], it is said: ''The power of attorney also provides that it is irrevocable; and although this is not conclusive, it nevertheless tends to prove that plaintiff had an interest in the subject matter upon which it was to operate.''

Here the plaintiff declared the power to be coupled with an interest and irrevocable, and it was given as security for the payment of an indebtedness. The appellants had an interest in what was the subject matter at the time of its execution, to wit, the wages to be earned from the existing employment. It is therefore clear that the power could not be revoked while that employment existed unless the debt were discharged. But, as we have already seen, plaintiff himself had no legal interest in the wages to be received from Newman & Levinson until the beginning of said employment. Prior to that time, therefore, he could not legally invest anyone with an interest in said wages. Hence, up to the time of the second employment appellants' power of attorney, as far as the wages due from Newman & Levinson are concerned, was not coupled with an interest in the subject of the agency, and, in the absence of other circumstances, could be revoked. But when the attempt was made to revoke it, the second employment had begun and the agent had made an assignment while said employment was in existence. It may be that the door was thereby opened for the operation of the principle of ratification or estoppel, or of the application of section 2356, Civil Code, that would preclude the attempted revocation from affecting the assignments already made, but we need not decide this minor phase of the question at issue as at any rate a comprehensive view of the nature of the original transaction, and the character of the present action, in the light of the principles of equity, compels the conclusion, we think, that the judgment is erroneous.

The facts disclosed, either expressly or by implication, in the pleadings are that defendants advanced money to plaintiff upon the faith and assurance based upon a solemn promise in writing that defendants should be allowed to appropriate as they deemed advisable the future earnings of plaintiff until the debt was satisfied. Confiding in plaintiff's plighted honor, defendants advanced more money to respondent. We must

assume that no advantage was taken of plaintiff, that there was no overreaching, no misrepresentation, no concealment, nothing unconscionable in the transaction —in other words, no infraction whatever of the principles of honesty and fair dealing. Indeed, it must have been a great accommodation to plaintiff for defendants to advance the money upon such uncertain security and without exacting excessive interest. After receiving the benefit of the confidence reposed in his fidelity, a court of equity will not aid plaintiff in the repudiation of his agreement, and will not unqualifiedly decree the cancellation of the written evidence of his moral obligation.

Admitting the legal invalidity of the transaction to the extent that we have noted, and that defendants could not in an action at law recover the wages due from the Newman & Levinson employment, still, under the facts disclosed, plaintiff is entitled to no relief in this equitable action unless he is willing to pay defendants what is due. This follows from the familiar maxim of equity jurisprudence, that he who seeks equity must do equity.

How does the matter appear in the light of the authorities?

In Pomeroy's Equity Jurisprudence, section 1285, it is said: "Neither the English nor the American statutes allow the legal assignment of mere naked possibilities, or expectations not coupled with an interest. The jurisdiction of equity continues to be exclusive over all other assignments of contingent, future, expectant interests and possibilities not embraced within this legislation"; and in section 1287: "And furthermore, possibilities not coupled with an interest—mere possibilities or expectancies—which are not embraced within these statutes are, according to the general course of decision, assignable in equity for a valuable consideration; and equity will enforce the assignment when the possibility or expectancy has changed into a vested interest or possession." Section 1288: "A particular instance of this doctrine is that which deals with the assignment of property to be acquired in the future. . . . A sale, assignment or mortgage, for a valuable consideration, of chattels or other personal property to be acquired at a future time, operates as an equitable assignment, and vests an equitable ownership of the chattels in the purchaser or mortgagee as soon as they are acquired by the vendor or mortgagor, without any further act on the part of either;

and this ownership a court of equity will protect and maintain at the suit of the equitable assignee.'' It is further held that the doctrine of equitable assignment of property to be acquired in future is much broader than the jurisdiction to compel the specific performance of contracts. Section 1297 is also instructive as to the enforcement of certain contracts in equity.

Again, the same learned author interprets the maxim to which we have adverted to mean ''that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he has acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject matter of the controversy.'' (Section 385.) Among the illustrations of the doctrine is the following: ''Under statutes against usury, which make *void* all usurious debts and obligations, the debtor may maintain a suit in equity for the purpose of procuring the usurious bond or other security to be surrendered up and canceled; but this relief will only be granted upon the condition that the plaintiff does equity by repaying to his creditor the amount which was actually loaned upon the security.''

It is properly declared that the principle pervades the entire equity jurisprudence so far as it is concerned with the administration of equitable remedies.

In the Encyclopedia of Law, *supra,* page 1032, it is declared that ''There can be no valid assignment of future wages where they constitute a mere possibility coupled with no interest. . . . But speaking generally, it may be said that such assignments are valid in equity when the consideration is meritorious and no rights of third parties intervene.''

Judge Story states the rule in section 1040 of his work on Equity Jurisprudence as follows: ''But courts of equity will support assignments not only of choses in action and of contingent interests and expectancies, but also of things which have no present actual or potential existence, but rest in mere possibility; not indeed as a present positive transfer operative *in praesenti*, for that can only be of a thing *in esse*, but

10 Cal. App.—36

as a present contract—to take effect and attach as soon as the thing comes *in esse.*''

In *Field* v. *Mayor etc. of New York,* 6 N. Y. 179, 57 Am. Dec. 435, it is held that the assignment of money to be earned by performance of a contract for work and materials, although a mere possibility cannot operate immediately, but it becomes operative in equity when the subject matter becomes existent or due.

In *Edwards* v. *Peterson,* 80 Me. 367, it is held that an assignment of wages expected to be earned in the future in a specified employment, though not under an existing employment or contract, is valid in equity. The same principle is announced in the case of *In re Garcelon,* 104 Cal. 584, [42 Am. St. Rep. 134, 38 Pac. 417], where reference is made to sections 700 and 1045 of the Civil Code, and it is declared that ''These sections simply state the well settled and well understood rule of the common law upon the subject to which they relate. At common law a mere possibility, such as the expectancy of an heir, was not regarded as such an existing interest as to be the subject of a sale or capable of passing by assignment; but in equity the rule was different, and agreements for the sale or release of expectancies, if fairly made and for an adequate consideration, were enforced upon the death of the ancestor, and in our opinion, it was not the intention of the legislature, in enacting the sections of the code just referred to to make any change in the rule by which courts of equity were heretofore governed in dealing with this class of contracts.''

The only possible answer to the foregoing is that a contract to assign future wages or salary is against public policy, and therefore void. But this position cannot be maintained. There is a marked difference in the case of a public official, for the reason that the assignment of his salary to be earned tends to impair the efficiency of the public service and therefore it is generally held to be void in law and equity as being against public policy.

In the case of *Smith* v. *Atkins,* 18 Vt. 461, it is said: ''It is argued that such contracts are so much against public policy that they ought not to be supported, but we think they are rather beneficial and enable the poor man to obtain credit when he could not otherwise do it, and that without detriment to the creditors.''

In *Mallin* v. *Wenham*, 209 Ill. 258, [101 Am. St. Rep. 233, 70 N. E. 566], it is said: "We cannot see that there is anything intrinsically vicious in an assignment of wages. The assignor, in such case, simply draws upon his future prospects to supply present needs, which may be of the most urgent and pressing character. There is no law in this state to prevent a poor person from mortgaging or pledging any or every article of property he possesses, as security for his debts, and such a privilege may be of great value."

A person has the same right to assign his wages as he has to mortgage his homestead or to mortgage personal property that is exempt from execution. If he does not choose to avail himself of the liberal exemption which the statute provides, the courts cannot interfere in his behalf.

It is universally held, as stated by Greenhood on Public Policy, that: "The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."

Before a court should declare a contract not *malum in se* opposed to sound public policy, it must be entirely satisfied that the public will be substantially benefited and that such advantage is not merely theoretical or problematical.

Of course, if there was any element of fraud in the transaction by which defendants secured the power of attorney and assignments in controversy, the plaintiff should be permitted to amend his complaint and so allege, but, as the record shows, he has come into a court of equity relying upon his naked legal right without tendering or offering to pay what is justly due appellants, and not showing himself entitled to the generous aid of this comprehensive jurisdiction that looks to the morality and good faith of the transaction; and therefore we are satisfied the court erred in overruling the demurrer to the complaint and sustaining the demurrer to the answer.

The judgment is reversed.

Chipman, P. J., and Hart, J., concurred.