[Civ. No. 3027.   Third Appellate District.—August 6, 1926.]

## D. M. WALKER, Appellant, v. JOHN F. RICH, as County Auditor, etc., Respondent.

[1] WAGES — WHEN ASSIGNABLE. — Where an employment does not exist but a party may be employed by another in the future, a case of a mere possibility not coupled with an interest is presented, and the element of negotiability is wanting; but where the employment already exists, a case of a possibility coupled with an interest is presented, and the wages yet to be earned from the employment are assignable.

[2] ID. — PUBLIC OFFICER — UNEARNED SALARY — ASSIGNMENT. — Unearned salary of a public officer cannot be assigned.

[3] PUBLIC OFFICE—EXERCISE OF SOVEREIGN FUNCTIONS.—A public office is the right, authority, and duty, created and enforced by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, either legislative, executive, or judicial, to be exercised by him for the benefit of the public.

[4] ID.—EMPLOYMENT ON HIGHWAY—PERFORMANCE OF LABOR.—Where a person is employed by the county, acting through its governing board, to perform labor upon the public highway by the use of such mechanical and other equipments and means as are commonly used in and necessarily required for the performance of such labor, and the employment is not for a definite term or period but is to be prosecuted from time to time or as the necessity arises, and he is subject to be discharged at any time, such employment does not constitute a public office.

[5] WAGES — ASSIGNMENT FOR NECESSARIES — PUBLIC POLICY. — The act by a laborer or a contractor performing work for a county, or a city, or a state, of assigning, if necessary, unpaid moneys earned by him for labor or work so performed in payment for the necessaries of life to one furnishing him with such necessaries is not against public policy.

[6] ID. — EMPLOYMENT BY COUNTY — VALID ASSIGNMENT — PRIORITY OVER JUDGMENT.—Where the employment of the judgment defend-

1. Assignment of wages, note, 94 Am. Dec. 650.  See, also, 3 Cal. Jur. 245; 2 R. C. L. 603.

2. Assignment of unearned salary of public officer, notes, 41 Am. Dec. 443; 94 Am. Dec. 650; 4 Ann. Cas. 425, 5 L. R. A. (N. S.) 566.  See, also, 3 Cal. Jur. 247; 2 R. C. L. 605.

3. See 21 Cal. Jur. 819.

ant by the county was not such as to constitute him a public officer, and the assignment of his wages, earned and to be earned, was in writing, with the written consent of the wife, and was for the necessities of life, and was direct to the party furnishing such necessities, and such assignment was filed with the county auditor prior to the filing with him of a transcript of the judgment, the assignment was valid, and the auditor properly paid the wages to the assignee, in preference to the judgment creditor.

(1) 5 C. J., p. 852, n. 45, p. 854, n. 46, p. 868, n. 48, p. 871, n. 64. (2) 5 C. J., p. 872, n. 70, p. 873, n. 73. (3) 29 Cyc., p. 1363, n. 18, p. 1364, n. 19, 28. (4) 5 C. J., p. 869, n. 55; 29 Cyc., p. 1364, n. 28, p. 1366, n. 40. (5) 5 C. J., p. 873, n. 72 New. (6) 5 C. J., p. 971, n. 74.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

George W. Walker and Russell W. Cantrell for Appellant.

U. W. Brown for Respondent.

HART, J.—The plaintiff on the seventh day of November, 1923, obtained a judgment against one D. B. Smith and his wife, in the justice's court of Williams judicial township, in the county of Colusa, in the sum of $299.99, for money due plaintiff from the Smiths for groceries furnished the latter by the former. On June 19, 1924, an execution upon said judgment was duly issued and the same delivered to the constable of said judicial township for levy upon the property of defendants to satisfy said judgment, but said constable returned the execution unsatisfied. It appears from the findings that said D. B. Smith, from time to time during the times set out in the petition, was employed by the county of Colusa to work with his teams, wagons, and scrapers upon the county roads of said county, for which services and use of teams, wagons, etc., he was paid wages by said county, amounting, approximately, in the aggregate, so the complaint or petition alleges, to the sum of $150 per month, payable on or about the first day of each and every month.

Proceeding under and in pursuance of the provisions of section 710 of the Code of Civil Procedure, the plaintiff, on

the thirtieth day of June, 1924, "at about the hour of 9:30 A. M. of said day," filed with the defendant or respondent, as auditor of the county of Colusa, a duly authenticated transcript of said judgment, and demanded of said respondent, as said auditor, that he issue his warrant upon said judgment for the sum of money then due from said county to said D. B. Smith, to wit, approximately the sum of $150, but that the respondent, as said auditor, refused and still refuses to issue to plaintiff his said warrant for said or any sum then due said D. B. Smith, the judgment debtor under said judgment. The plaintiff thereupon instituted in the court below this proceeding in mandate, praying that the respondent be compelled, as auditor of Colusa County, to issue his warrant in favor of the justice of the peace of said judicial township for such sums as may be due the said D. B. Smith from the said county as for the compensation earned by said Smith for the month mentioned and for other subsequent months, as will hereinafter be explained. The court denied the application, and the plaintiff appeals from the judgment thereupon entered, supporting the appeal by the judgment-roll alone.

The findings tell the rest of the story, which stated in substance, is: That on the fifteenth day of June, 1924, and prior to the filing of the certified copy of said judgment with the auditor, said D. B. Smith by a writing assigned a claim due him from said county, in the sum of $135, which was earned for the labor performed, etc., for the period commencing on and with the second day of June, 1924, and ending on and with the fourteenth day of June, 1924, to the College City Rochdale Company, a corporation; that on the twenty-fourth day of July, 1924, in the early afternoon, the appellant filed a second authenticated transcript of said judgment with said auditor; that before the filing of said second authenticated transcript of said judgment, and on the nineteenth day of July, 1924, said D. B. Smith, by a writing, assigned to said Rochdale Company all moneys then earned by him for the services to said county during the said month of July and prior to said assignment; that, early in the morning of the twenty-ninth day of August, 1924, appellant filed with said auditor a third duly authenticated transcript of said judgment; that on the nineteenth day of August, 1924, and before the filing by appellant

of said third transcript of said judgment, said D. B. Smith assigned in writing all moneys then due him from said county for labor of himself, teams, etc., and then earned prior to the filing of said third transcript, to said Rochdale Company, "and also all moneys that he might thereafter earn during the month of August, 1924, for the labor of himself, teams, wagons and scrapers, for work on the roads and bridges in said Colusa County," which assignment was filed with defendant (auditor) on August 21, 1924; that on the afternoon on the twenty-ninth day of October, 1924, the appellant filed with said auditor a fourth duly authenticated transcript of said judgment; that on the tenth day of October, 1924, and before the filing of said fourth transcript of said judgment, said Smith, by a writing, assigned to said Rochdale Company "all moneys then earned during the month of October, 1924, prior to said assignment, for the labor of himself, teams, wagons and scrapers, and also all the money that he might thereafter earn during the month of October, 1924, for the labor of himself, his teams, wagons and scrapers."

The court further found, as the complaint or petition alleges, that the respondent, as auditor, etc., issued his warrant, in each of the instances above mentioned, to the said Rochdale Company, upon the assignment made by said D. B. Smith to said company and filed with said auditor. It is also found that the labor performed by said Smith for said county was upon the county roads and bridges in said county, "but that he was not a regular employee of said county; that for such services of himself and of his teams, wagons and scrapers claims were presented to the Board of Supervisors of the said County of Colusa, and allowed by said Board at its regular meetings in the month following the doing of said work." It is further found that all said warrants for wages earned by said D. B. Smith were assigned to said Rochdale Company "for the necessities of life, and that such necessities of life were furnished the said D. B. Smith by said Rochdale Company directly, and that said assignments, and each of them were only for the amounts needed to furnish such necessities; that each of said assignments had attached to it the written consent of the wife of said D. B. Smith, consenting to the making of said assignments."

The court concluded, as a matter of law from its findings, that the money earned by said D. B. Smith in the manner indicated for the months named in the complaint and findings "became the property of the College City Rochdale Company upon the making and the filing of said assignments."

It will be noted that in at least two instances the assignments involved not only the transfer of money already earned by said Smith at the time of the making of the assignments, but also moneys to be earned by him in the future for the respective months covered by said assignments.

Since, as to the time of the filing of the respective documents with the auditor, the assignments hold priority over the transcripts of the judgment, it is obviously true that, if the assignments are legally valid, the action of the auditor in issuing the several warrants to the assignee of D. B. Smith and consequently the action of the court below in refusing to grant a peremptory writ of mandate herein must be sustained. The appellant, though, contends that the assignments were and are absolutely void in that they were and are in contravention of established public policy for this reason: That they involved an attempt to assign and transfer compensation or wages or salary to be earned and paid in the future to an officer of the government for services yet to be performed. The appellant maintains that this cannot legally be done, nor can such an employee assign a part of his claim only. The defendant, *per contra*, maintains that the said D. B. Smith, although an employee of Colusa County and the services performed and to be performed by him, compensation for which he assigned on the several occasions indicated to the Rochdale Company, were for the public, was not a "public officer," within the true meaning or concept of that phrase, but was, as such employee, only intermittently, or as the exigencies of his duties as such required of him from time to time, by the use of his own teams and other equipments necessary thereto, engaged in the performance of the work of the ordinary laborer, as the latter term is commonly understood to imply. As seen, the conclusions of law arrived at by the court below from the facts harmonize with the position of the defendant.

[1] Before taking up what is regarded as the pivotal point of decision here, these well-established propositions may be stated: 1. That, as our Civil Code (sec. 1044) expressly provides, "property of any kind may be transferred except as otherwise provided"; 2. That, as also the same code likewise provides, a mere possibility not coupled with an interest cannot be transferred. In this connection, it may be explained that, where an employment does not exist but a party may be employed by another in the future, such situation presents a case of a mere possibility not coupled with an interest, and hence the element of negotiability is wanting, but where the employment already exists, the wages yet to be earned from such employment by the party employed, then, although we have a case of mere possibility, it is a possibility coupled with an interest, which is assignable under our code and according to the authorities. (See *Cox* v. *Hughes,* 10 Cal. App. 553, 557, 558 [102 Pac. 956]; 2 Am. & Eng. Ency. of Law, p. 1031.) The authority last named thus states the rule last referred to: "An assignment of wages to be earned under an existing employment made in good faith and for a valuable consideration is valid. It is immaterial in such a case, that the assignor works from day to day and is hired for no specified time, or that he works by the piece, and his wages per month vary, or that he is removable at any time."

Another rule of the Civil Code (sec. 955) is important to the present consideration in that therein it is declared: "No assignment of, or order for wages or salary shall be valid unless made in writing by the person by whom the said wages or salary are earned and no assignment of, or order for, wages or salary made by a married person shall be valid unless the written consent of the husband or wife of the person making such assignment or order is attached to such assignment or order. . . . No assignment of, or order for, wages or salary shall be valid unless at the time of the making thereof, such wages or salary have been earned, except for the necessities of life and then only to the person or persons furnishing such necessities of life directly and then only for the amount needed to furnish such necessities."

As has been shown, the court, in the instant case, expressly found that the assignments were made for and in consideration of necessaries of life furnished D. B. Smith by the

assignee, and that the written consent of the wife of the assignor was attached to each of the assignments.

[2]   It is, of course, conceded that it is a well-established rule of public policy that an unearned salary of a public officer cannot be assigned. (*Bangs* v. *Dunn,* 66 Cal. 72 [4 Pac. 963].)   The rationale of the rule has been stated in various forms.   Thus in 2 Am. & Eng. Ency. of Law, page 1033: "The protection thus extended to those engaged in the performance of public duties is not based upon the ground of their private interest, but upon the necessity of securing the efficiency of the public service by insuring that the funds provided for its maintenance shall be received by those who are to perform the work, at the periods appointed for their payment.   The assignment of such funds before they are due impairs the efficiency of the public service, and is void both in law and equity as being against public policy."

In *Lewis* v. *Denver,* 9 Colo. App. 328 [48 Pac. 317], the reason of the rule is thus explained: "The salary of a public officer is a provision made by law for his maintenance and support during his term, to the end that, without anxiety concerning his means of subsistence, he may be able to devote himself entirely to the duties of his office."

Again: "It would be very embarrassing generally, and, under some circumstances, might prove fatal to the public service, to allow the means of support of the servants of the government to be intercepted, and if the funds were thus allowed to be diverted from their legitimate object, by process of attachment in favor of creditors, or otherwise, the functions of the government might be suspended." (*Bank* v. *Dibrell,* 3 Sneed (Tenn.), 379; *Ruperich* v. *Baehr,* 142 Cal. 190, 194 [75 Pac. 782].)

It is obviously true that prior to the enactment of section 710 of the Code of Civil Procedure the salary of a public official was not subject to the process of attachment or garnishment. (*Trow* v. *Moody,* 27 Cal. App. 403, 405 [150 Pac. 77]; *Ruperich* v. *Baehr, supra.*)   This conclusion was based upon the proposition that, until such enactment, the seizing thus of the salary of a public officer was contrary to public policy.

The single question here, then, is: Was the said D. B. Smith, while employed by the county of Colusa to perform

the services indicated, a public officer of said county? In another form, the question may be put: Was his employment a public office? If the employment was not "a public office," then, obviously, Smith was not a "public officer." [3] "A public office," says Mr. Mechem, in his work on Public Officers, section 1, "is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public." Again, that learned author declares (sec. 4, Id.): "The most important characteristic which distinguishes an office from an employment or contract is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being to be exercised for the public benefit. Unless the powers conferred are of this nature, the individual is not a public officer." The cases generally have approved and accepted the definition of "public office" and "public officer" thus given by Mr. Mechem. (See *Curtin* v. *State of California,* 61 Cal. App. 377 [214 Pac. 1030], and cases therein named.) [4] It is perfectly clear that the employment in the performance of the duties of which said D. B. Smith was engaged is far from coming within the description of a "public office" as given by Mr. Mechem. The employment merely invovled a con‧tract between him and the county, acting through its governing board, whereby he agreed to and did perform certain labor, which in no sense was concerned or connected with the exercise or administration of the sovereign powers of the government, except in so far as his employment for the purpose indicated involved the exercise by the board of supervisors itself of the general sovereign powers conferred upon it by law. There was neither expressly nor by implication the delegation of any of the sovereign powers of the government to Smith by virtue of the contract of employment. He was merely engaged to perform labor upon the public highway by the use of such mechanical and other equipments and means (scrapers, wagons, and horses or

mules) as are commonly used in and necessarily required for the performance of such labor. The findings show that he was not employed for a definite term or period but fairly and reasonably afford the conclusion that his employment was intermittent or to be and was prosecuted from time to time or as the necessity for work upon those of the public roads to which his employment was assigned might require, and that he was subject to be discharged at any time. In days agone, when the propelling power of fire department apparatus of cities was the horse, a contract, either of definite or indefinite duration, by a city with a farrier to shoe its "fire horses" would not for a moment be supposed to confer upon the farrier any of the sovereign functions of government. Nor would such a contract by a county with a machinist to repair the former's automobiles or heating machinery in its buildings have any such effect. No possible difference in the general character of the duties involved is discernible between the contract of employment in the instant case and those in the cases supposed. But it is unnecessary to proceed further with an independent discussion of the problem propounded here. An examination of the cases which have dealt with the precise question presented herein and a comparison of the facts of this with the facts of said cases will readily show the utter futility of the argument advanced or any which may be advanced in support of the theory that the contract of employment involved charged Smith with the exercise or administration of any part of the sovereign powers of the state. In *Curtin* v. *State of California, supra,* by the authority of a concurrent resolution adopted by the senate and assembly of the legislature, the Governor appointed the plaintiff as an expert on the subject of revenue and taxation, to investigate the existing state system of taxation and report to the succeeding legislature the results of such investigation, with the view of correcting the recognized deficiencies in said system. No express provision was made for compensating plaintiff for the services thus to be performed by him. After making the investigation and his report thereon, the plaintiff brought an action for the reasonable value of his services rendered under and by virtue of said employment. At the time of his appointment the plaintiff was a member of the state senate, and it was contended at the trial of the action and

on appeal that said employment constituted a public office and the appointee a public officer, and that by reason thereof the appointment of plaintiff was absolutely void under the terms of section 19 of article IV of the constitution, making it unlawful for any member of the state senate or the assembly, during the term for which he shall have been elected, "to hold or accept any office, trust, or employment under this state." This court held that the duties involved in such employment did not appertain to the exercise or administration of any of the sovereign powers of the state, and hence the appointment constituted a mere contract of employment and not a public office. The question is fully examined in that case, and many authorities supporting the conclusion therein arrived at are cited. Among the cases so cited is that of *Robertson* v. *Ellis County,* 38 Tex. Civ. App. 146 [84 S. W. 1097], in which it was held, after an elaborate consideration of the question, that "official stenographers," authorized by law to be appointed by the judges of the district courts of said state, and whose duties were to report the proceedings of all trials and other business properly coming before said tribunals, while public employees, were not "public officers," for the reason that the act authorizing their appointment did not confer upon them "any sovereign function of government." (See, also, *Mulnix* v. *Elliott,* 62 Colo. 46 [156 Pac. 216].) If instances such as these do not involve the delegation of sovereign functions of government, then surely it cannot be held that the employment by the government of a party to perform for it the duties of a laborer confers such functions or powers. [5] There are many cases to the effect that the act by a laborer or a contractor performing work for a county, or a city, or the state, in assigning, if necessary, unpaid moneys earned or to be earned by him for labor or work so performed in payment for the necessaries of life to one furnishing him with such necessaries is not against public policy. Indeed, in many cases it has been said that the assignment of wages by the one earning them is often a benefit rather than a handicap to the employer as well as the employee, even though the former be the public. (See *Cox* v. *Hughes,* 10 Cal. App. 553, 561 et seq. [102 Pac. 956]; *Smith* v. *Atkins,* 18 Vt. 461; *Mallin* v. *Wenham,* 209 Ill. 258 [101 Am. St. Rep. 233, 65 L. R. A. 602, 70 N. E. 564].)

[6]   Our conclusion is that Smith, at the times of executing the assignments, had the right to assign any claims he then had against the county or which might accrue to him in the future by reason of the existing contract of employment between him and the county for necessaries of life to any party furnishing him such necessaries, such assignments not covering earnings in excess of the amounts required to liquidate the debts due for such necessaries.

The judgment appealed from rests upon an impregnable legal foundation, and it is accordingly affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 4, 1926.