TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 22-802 |
| of | : | |
| | : | February 29, 2024 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| MANUEL M. MEDEIROS | : | |
| Deputy Attorney General | : | |

VICTORIA GUNTER, TANESHA TRAVIS, AND MARA HARVEY (Applicants) have applied for leave to sue PAUL KEEFER—who is currently a Trustee on the Sacramento County Board of Education and the President, Chief Executive Officer, and Executive Director of the Pacific Charter Institute—in quo warranto to remove him from his seat on the County Board of Education.

**QUESTION PRESENTED AND CONCLUSION**

The application alleges that Keefer's service on the County Board violates (1) Government Code section 1099, which prohibits holding incompatible public offices, and (2) Education Code section 1006, which makes school district employees ineligible to serve on a county board of education with jurisdiction over their district.

We conclude that there are substantial issues of fact or law as to whether Keefer is (1) simultaneously holding incompatible public offices in violation of Government Code section 1099, and (2) serving on the County Board while an employee of a school district within the Board's jurisdiction in violation of Education Code section 1006. Consequently, and because the public interest will be served by allowing the proposed quo warranto action to proceed, the application for leave to sue is GRANTED.

1

22-802

## BACKGROUND

Education Code section 1000 creates county boards of education consisting of five to seven members.[1] A county board of education generally oversees the schools in the county and approves the budget prepared by the county superintendent.[2]

Charter schools are a class of public school usually initiated by some combination of teachers, parents, community leaders, and community-based organizations.[3] Charter schools operate differently from traditional public schools. The California Charter Schools Act exempts them from many laws governing traditional school districts.[4] The Act "is intended to allow 'teachers, parents, pupils, and community members to establish . . . schools that operate independently from the existing school district structure.'"[5] It "seeks to expand learning opportunities, encourage innovative teaching methods, provide expanded public educational choice, and promote educational competition and accountability within the public school system."[6]

Charter schools must apply for and obtain a charter from the public school system to operate. The charter approval process typically begins at the school district level, although in certain circumstances it can begin with the county board of education.[7] A party wishing to operate a charter school typically presents a petition to the governing board of the school district in which the charter school would be located.[8] If the district board denies the petition, the petitioner may appeal that denial to the relevant county board of education or it may present its application to the county board in the first instance.[9] If the county board of education also denies the petition, the petitioner may

---

[1] Ed. Code, § 1000, subd. (a).

[2] Ed. Code, §§ 1040, 1042, 1043, 1080; 85 Ops.Cal.Atty.Gen. 77, 77 (2002).

[3] See Cal. Dept. of Education, Charter Schools-*CalEdFacts*, https://tinyurl.com/ycxsmff6 (as of Feb. 27, 2024).

[4] Ed. Code, § 47610.

[5] *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1186, quoting Ed. Code, § 47601.

[6] *Ibid.*

[7] Ed. Code, §§ 47605, subd. (a) (petition submitted to governing board of school district), 47605.5 (petition submitted to county board where school would serve students for whom county office is responsible for direct education), 47605.6 (petition submitted to county board where school would provide services for pupils across districts within county).

[8] Ed. Code, § 47605, subd. (a)(1).

[9] Ed. Code, § 47605, subds. (k)(1)(A)(i), (k)(1)(A)(ii).

22-802

appeal that denial to the State Board of Education.[10] If the district or county board grants a charter petition, the granting board is designated as the chartering authority.[11] If the State Board of Education grants a charter petition, it designates either the district or county board as the chartering authority.[12]

Although charter schools generally operate independently from the traditional public school system, they are nonetheless "subject to public oversight" and government regulation.[13] It is this public oversight that prompts the question before us: May the chief executive officer of a charter school management organization (Pacific Charter Institute) sit as a Trustee on a county board of education that has geographical jurisdiction over charter schools that the organization manages?

A charter school may elect to operate as (or be operated by) a nonprofit public benefit corporation organized and operated pursuant to the Nonprofit Public Benefit Corporation Law.[14] Pacific Charter Institute is a nonprofit public benefit corporation that serves as the "entity managing a charter school" or charter management organization with respect to several charter schools in the Sacramento region.[15] Pacific Charter, whose

---

[10] Ed. Code, §§ 47605, subds. (k)(2), (k)(2)(E). There is an exception for counties in which the county board of education has jurisdiction over a single school district. In those cases, the petitioner may elect to submit a petition denied by the district board directly to the state board. (Ed. Code, § 47605, subd. (k)(1)(B).)

[11] *California School Bds. Assn. v. State Bd. of Ed*. (2010) 186 Cal.App.4th 1298, 1307; see Ed. Code, § 47604.32. A county board of education may also approve the petition for a charter school that operates at one or more sites within the county and that provides instructional services not generally provided by a county office of education. (Ed. Code, § 47605.6, subd. (a)(1).)

[12] Ed. Code, § 47605, subd. (k)(2)(E).

[13] *Today's Fresh Start, Inc. v. Los Angeles County Office of Ed*. (2013) 57 Cal.4th 197, 206.

[14] Ed. Code, § 47604; Corp. Code, § 5110 et seq. California law forbids a for-profit charter management organization to operate a charter school. (Ed. Code, § 47604, subd. (b)(1).)

[15] Memorandum in Opposition, p. 10; see Ed. Code, §§ 47604.1, subd. (a) ("For purposes of this section, an "entity managing a charter school" means a nonprofit public benefit corporation that operates a charter school consistent with Section 47604"); cf. 20 U.S.C. § 7221i(3) ("The term "charter management organization" means a nonprofit organization that operates or manages a network of charter schools linked by centralized support, operations, and oversight"); see Pacific Charter Institute, https://www.pacificcharters.org/organization/overview (as of Feb. 27, 2024).

corporate offices are located in the City of Sacramento, describes itself as a "family of schools"[16] and operates the Heritage Peak Charter School and the New Pacific Charter School in Sacramento County. Pacific Charter also operates the Sutter Peak Academy in Sutter County, New Pacific Charter in Placer County, and the Valley View Charter Prep School and Rio Valley Charter School in San Joaquin County.[17]

Paul Keefer, the proposed defendant in this quo warranto matter, is the President, Chief Executive Officer, and Executive Director of Pacific Charter, which he co-founded in 2005.[18] The Pacific Charter Bylaws provide that the president of the corporation "shall be known as the 'Executive Director,'" and that "[t]he Executive Director . . . is the chief executive officer" and "the general manager of the Corporation," who supervises the corporation's activities, affairs, and officers.[19] The Executive Director also has such other powers and duties as the Board of Directors may require.[20] In addition, Keefer has been a member of the Sacramento County Board of Education (County Board) since June 2018. In 2022, he was reelected to the County Board for a second term, which will expire in June 2026.[21]

The applicants here are Victoria Gunter, Tanesha Travis, and Mara Harvey. Their application for leave to file a complaint in quo warranto alleges two causes of action. The first alleges that Keefer is unlawfully occupying the two incompatible public offices of Executive Director of a charter school system that operates in Sacramento County and Trustee on the Sacramento County Board, in violation of Government Code section 1099(a), which prohibits the holding of incompatible public offices.[22] Under Education

---

[16] Pacific Charter Institute, *supra*, https://www.pacificcharters.org/organization/overview (as of Feb. 27, 2024).

[17] Verified Statement in Opposition, ¶ 3; see also Pacific Charter Institute, https://www.pacificcharters.org/schools/ (as of Feb. 27, 2024).

[18] Pacific Charter Institute, Executive Director, http://tinyurl.com/5yesue5p (as of Feb. 27, 2024).

[19] Bylaws of Pacific Charter Institute (rev'd 9/5/2019), art. VIII, §§ 1, 8, Appx. C to Verified Statement of Facts (hereafter Bylaws), copy available at http://tinyurl.com/mrxwt6e9 (as of Feb. 27, 2024). For the sake of simplicity, we will refer to Keefer only in his capacity as Executive Director of Pacific Charter. The fact that he has alternative titles for his duties in the Pacific Charter administration is immaterial to our analysis and conclusion.

[20] Bylaws, art. VIII, § 8; Verified Statement in Opposition, ¶¶ 3, 9.

[21] Sacramento County Office of Education, https://www.scoe.net/divisions/board/ (as of Feb. 27, 2024); Verified Statement in Opposition, ¶ 2.

[22] Gov. Code, § 1099, subd. (a) ("A public officer, including, but not limited to, an

4

22-802

Code section 47604.1(b)(3), this prohibition applies to an entity managing a charter school or charter management organization, such as Pacific Charter.[23] The second cause of action alleges that, as an employee of a charter school within the jurisdiction of the County Board, Keefer unlawfully occupies the office of Trustee on the County Board in violation of Education Code section 1006(a). This section excludes from membership on a county board of education "any employee of a school district that is within the jurisdiction of the county board of education."[24]

Quo warranto is a civil action used most commonly to challenge an incumbent public official's right or eligibility to hold a given public office.[25] This form of action is codified in section 803 of the Code of Civil Procedure, which provides that "[a]n action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office . . . within this state."[26]

## ANALYSIS

Where a private party seeks to pursue a quo warranto action to oust an incumbent public official from office, that party must first apply for and obtain the Attorney General's consent.[27] In determining whether to consent to the proposed action, we do not

appointed or elected member of a governmental board, commission, committee, or other body, shall not simultaneously hold two public offices that are incompatible").

[23] See Ed. Code, § 47604.1, subd. (b)(3) ("A charter school and an entity managing a charter school shall be subject to . . . Article 4 (commencing with Section 1090) of Chapter 1 of Division 4 of Title 1 of the Government Code.")

[24] Ed. Code, § 1006, subd. (a) ("Any registered voter is eligible to be a member of the county board of education except the county superintendent of schools or any member of his or her staff, or any employee of a school district that is within the jurisdiction of the county board of education").

[25] Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale* (2001) 91 Cal.App.4th 1221, 1225; 103 Ops.Cal.Atty.Gen. 1, 71 (2022). The statutory proceeding is the modern successor to the common law writ of quo warranto, a proceeding by which the Crown inquired "by what authority" a person is holding a public office. (*People ex rel. Lacey v. Robles* (2020) 44 Cal.App.5th 804, 811 (*Lacey*); *Rando v. Harris* (2014) 228 Cal.App.4th 868, 875 (*Rando*); 101 Ops.Cal.Atty.Gen. 76, 77 (2018).)

[26] Code Civ. Proc., § 803; see *Rando, supra*, 228 Cal.App.4th at p. 873; 97 Ops.Cal.Atty.Gen. 12, 14 (2014).

[27] *International Association of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693-698.

5

resolve the merits of the controversy. Rather, we employ a three-part analysis that considers: (1) whether quo warranto is an available remedy under the circumstances; (2) whether the relator has raised a substantial issue of law or fact concerning the official's right to hold office, and (3) whether authorizing the quo warranto action will serve the public interest.[28] Because we conclude that each of these conditions exists here, we grant the application to proceed in quo warranto.

## 1. Quo Warranto Is an Available Legal Remedy

As to the first cause of action, Government Code section 1099 prohibits the holding of incompatible public offices. Keefer was re-elected to the Sacramento County Board of Education in June 2022, and we have previously concluded that the position of Trustee on a county board of education is "undoubtedly" a public office.[29] If Keefer's position at Pacific Charter is a public office (or treated as such for purposes of an incompatibility analysis) and is incompatible with his simultaneous service as a Trustee of the County Board of Education, then Keefer's occupancy of both positions would violate section 1099. Forfeiture of office under this prohibition is enforceable by an action in quo warranto.[30]

As to the second cause of action, Education Code section 1006 directs that an "employee of a school district" is ineligible to serve on a county board of education with jurisdiction over that district. If Keefer's role with Pacific Charter, which operates schools in Sacramento County, constitutes being an "employee of a school district" for purposes of section 1006, then he would be ineligible to serve as a Trustee on the Sacramento County Board of Education. Quo warranto is the proper means to test eligibility to hold a public office.[31]

---

[28] *Rando*, *supra*, 228 Cal.App.4th at p. 879; 72 Ops.Cal.Atty.Gen. 15, 20 (1989); see also *Lacey*, *supra*, 44 Cal.App.5th at p. 816 ("Attorney General's gatekeeping function 'also protects public officers from frivolous lawsuits'"), internal quotation marks and citations omitted; 101 Ops.Cal.Atty.Gen. 42, 42 (2018) (Attorney General acts as "gatekeeper"); 98 Ops.Cal.Atty.Gen. 84, 87 (2015) (same).

[29] 104 Ops.Cal.Atty.Gen. 47, 49, fn. 16 (2021), citing 79 Ops.Cal.Atty.Gen. 155, 156 (1997); 31 Ops.Cal.Atty.Gen. 170, 170-171 (1958).

[30] Gov. Code, § 1099, subd. (b) ("When two public offices are incompatible, a public officer shall be deemed to have forfeited the first office upon acceding to the second. This provision is enforceable pursuant to Section 803 of the Code of Civil Procedure [the quo warranto statute].")

[31] See 95 Ops.Cal.Atty.Gen. 77 (2012) (statute precluding certain persons from holding office as director of a hospital district).

Accordingly, as to both proposed causes of action, quo warranto is an available and appropriate remedy.[32]

## 2. The Application Presents Substantial Legal Issues that Warrant Judicial Resolution.

### a. There Is a Substantial Legal Issue as to Whether Keefer's Position as Pacific Charter's Executive Director Qualifies as a "Public Office" under Section 1099 and, If So, Whether It Is Incompatible with Keefer's Public Office on the Sacramento County Board of Education.

#### i. "Public office"

As a threshold matter, we note that Education Code section 47604.1(b)(3) specifies that section 1099 (and the other provisions of the article in which it is contained) apply to an "entity managing a charter school." In this context, we believe that this coverage must be read as encompassing individual officers of the managing entity, as section 1099 prohibits an *individual person* from holding incompatible offices. While section 47604.1 does not expressly state that charter school-managing officers are public officers, we believe the statute must be read to treat them as such for purposes of the several conflict-of-interest provisions that it makes applicable to them. Otherwise, the statute would be meaningless. Indeed, the title of Article 4 (which includes section 1099) when it was enacted was "Prohibitions Applicable to Specified *Officers.*"[33]

A contemporaneous legislative committee analysis stated that the "measure requires entities managing charter schools to comply with the conflict of interest code sections described above." The analysis described charter management organizations as operating charter schools in much the same way that school districts operate traditional public schools, such as by "acting as the administrator of the school, appointing the governing body of the school, selecting curriculum, hiring teachers and staff, [and] providing budget and payroll services."[34] Clearly the legislative committee had in mind charter management organizations such as Pacific Charter, which manages and oversees

---

[32] 105 Ops.Cal.Atty.Gen. 65, 67 (2022); see Code Civ. Proc., § 803; *Nicolopulos v. City of Lawndale*, *supra*, 91 Cal.App.4th at p. 1225; 103 Ops.Cal.Atty.Gen. 33, 35-36 (2020).

[33] Stats. 1943, ch. 134, § 1090, p. 956, emphasis added; see now Gov. Code, Art. 4, Div. 4, Tit 1, commencing with § 1090. In interpreting statutes, we may consider titles of acts, headnotes, and chapter and section headings to determine legislative intent. (62 Ops.Cal.Atty.Gen. 81, 83 (1979); see also *Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955, 969.)

[34] Assem. Comm. on Ed., analysis of Sen. Bill No. 126 (2019-2020 Reg. Sess.) as amended Feb. 14, 2019, p. 5 (hearing. date Feb. 26, 2019).

22-802

multiple charter schools. Defendant Keefer is undoubtedly an officer of Pacific Charter and is, therefore, subject to the restrictions of section 47604.1(b)(3). This in itself raises a substantial issue as to whether his position qualifies as a "public office" for purposes of an incompatible-office analysis.

Even apart from section 47604.1, though, a substantial legal issue as to the nature of Keefer's position arises from applying the traditional test for determining whether a given position is a "public office" for purposes of the incompatible-offices prohibition. An important indicator of a public office is that the position be created or authorized by some statute.[35] "And it is essential that the incumbent be clothed with a part of the sovereignty of the state to be exercised in the interest of the public."[36] Since 2019, the function of charter school executive director has been expressly authorized by statute. Education Code sections 47604(b)(2)(A)(ii) and (iii) expressly define a corporation's "operation" of a charter school to include "[e]mploying, supervising, or dismissing employees of the charter school, including certificated and noncertificated school personnel," and "[m]anaging the charter school's day-to-day operations as its administrative manager."[37]

According to Pacific Charter's bylaws, Keefer is the "general manager of the Corporation [who] shall supervise, direct, and control the Corporation's activities, affairs, and officers."[38] Pacific Charter's website describes him as "work[ing] with his team to create systems to effectively manage an organization that extends over 10,000 square miles and yet still meet the needs of individual students with all abilities."[39] Keefer's duties and responsibilities are informed by significant public interests concerning the education of children.[40] His position is that of a charter superintendent, which in our view is reasonably equated to the public office of a district or county superintendent of schools.[41]

---

[35] 68 Ops.Cal.Atty.Gen 337, 341 (1985).

[36] *Levmel v. Johnson* (1930) 105 Cal.App. 694, 697.

[37] Ed. Code, § 47604, subd. (b)(2)(A)(ii), (iii).

[38] See Bylaws, art. VIII, § 8; Verified Statement in Opposition, p. 4, ¶ 9.

[39] Pacific Charter Institute, Executive Director, http://tinyurl.com/5yesue5p (as of Feb. 27, 2024).

[40] Ed. Code, § 47601.

[41] Keefer argues that his position is solely contractual and that he is therefore a mere employee not subject to section 1099. But Keefer manifestly carries out statutorily defined responsibilities included in "operating" a charter school, whether or not he does so pursuant to a contract with the corporation. Moreover, he carries out these duties in

8

22-802

Accordingly, the question whether Keefer's position at Pacific Charter qualifies as a "public office" for purposes of section 1099 is a substantial question of law and fact that warrants judicial resolution.

### ii. Incompatibility

The test for determining whether offices are incompatible under section 1099 is whether "one of the offices has supervisory, auditory or removal power over the other or if there would be any significant clash of duties or loyalties in the exercise of official duties," or if public policy considerations otherwise make it improper for one person to hold both offices.[42]  Only one potential significant clash of duties or loyalties is necessary to render offices incompatible.[43]  An actual conflict is not required; rather, the mere possibility of a conflict is sufficient to make two offices incompatible.[44]

The County Board is not presently the chartering authority for a Pacific Charter school.[45]  Nor does it appear that a Pacific Charter charter school petition has ever been the subject of an appeal to the county board of education.[46]  Yet Keefer acknowledges that if the County Board *were* the chartering authority for a Pacific Charter school, then the board "would have substantial oversight duties with respect to that charter school."[47]  Indeed, the application argues that the county board "may be called upon to evaluate a proposed charter; and, if the county board becomes the chartering authority, it will have the power to revoke or renew the school's charter."  This, in turn, could create a "significant clash of loyalties" for an individual who is both a Trustee on the county board and the Executive Director of the charter management organization operating the charter school.[48]

---

oversight of multiple charter schools.  (Cf., *Ghafur v. Bernstein* (2005) 131 Cal.App.4th 1230, 1238-1240 [superintendent of multiple charter schools is a "public official" for purposes of libel].)

[42] 104 Ops.Cal.Atty.Gen. 66, 69 (2021), citing 85 Ops.Cal.Atty.Gen. 60, 61 (2002); Gov. Code, § 1099, subd. (a); *Lacey*, *supra*, 44 Cal.App.5th at p. 819.

[43] *Lacey*, *supra*, 44 Cal.App.5th at p. 819; 87 Ops.Cal.Atty.Gen. 153, 154 (2004).

[44] 104 Ops.Cal.Atty.Gen., *supra*, at p. 69; see 93 Ops.Cal.Atty.Gen. 110, 111 (2010); 85 Ops.Cal.Atty.Gen., *supra*, at p. 61.

[45] Verified Statement in Opposition, ¶ 16.

[46] *Id.*, ¶ 17.

[47] Memorandum in Opposition, pp. 20-21.

[48] Relators' Supporting Memorandum of Petition, p. 18.

22-802

Keefer rejects what he calls the application's "conditional argument," but he does not address the potential for a conflict should a Pacific Charter petition become subject to the County Board's chartering authority.[49] The Charter Schools Act subordinates a charter school to the "supervisorial oversight" of its chartering authority.[50] "A chartering authority is required to monitor the fiscal condition of each charter school under its authority, and to ensure that each charter school under its authority completes all proper reports. A chartering authority may revoke a charter if the school violates its charter; fails to achieve student outcomes; fails to follow generally accepted accounting principles; engages in fiscal mismanagement; or violates any provision of law."[51]

While Keefer acknowledges that Pacific Charter chose not to appeal a petition denial from the Folsom-Cordova Unified School District to the County Board of Education,[52] a different choice by the corporation could have presented Keefer with a risk of conflicting loyalties. Or, Pacific Charter's governing board might decide in the future to directly petition the County Board as a chartering authority.[53] Again, such a decision could present Keefer with a conflict of loyalties. Moreover, Keefer himself emphasizes that Pacific Charter's governing board, not Keefer, "is responsible for all decisions regarding whether to petition a chartering authority for the right to operate a charter school within the authority's boundaries,"[54] thereby underscoring that he may have little or no control to prevent a future conflict in loyalties. In any event, even where the County Board of Education is not the chartering authority, the potential for conflicts of interest exist. The County Board has oversight responsibilities with respect to actions taken by chartering school districts within the county.[55]

---

[49] Memorandum in Opposition, p. 21.

[50] 101 Ops.Cal.Atty.Gen. 92, 108 (2018).

[51] *Ibid.*

[52] Memorandum in Opposition, p. 22; see Ed. Code, § 47605, subd. (k)(1)(A)(i) (appeal to county board after petition denial).

[53] See Ed. Code, § 47605.5 ("A petition may be submitted directly to a county board of education in the same manner as set forth in Section 47605 for charter schools that will serve pupils for whom the county office of education would otherwise be responsible for providing direct education and related services. Any denial of a petition shall be subject to the same process for any other county board of education denial of a charter school petition pursuant to this part").

[54] Verified Statement in Opposition, ¶ 8.

[55] See, e.g., Ed. Code, §§ 47605, subd. (k)(1)(A)(i) (appeal of petition denial to county board of education), 47605.9, subds. (b) & (c) (county board of education designated as chartering authority by state board), 47607, subd. (i) (appeal of charter revocation to

10

22-802

Section 1099 prohibits the simultaneous occupation of two public offices if "there is a *possibility* of a significant clash of duties or loyalties between the offices."[56]  As we have observed, the mere possibility of a conflict is sufficient to make two offices incompatible.[57]  Moreover, it is not "pertinent to say that the conflict in duties may never arise, it is enough that it may, in the regular operation of the statutory plan.  Nor is it an answer to say that if a conflict should arise, the incumbent may omit to perform one of the incompatible roles."[58]  The prohibition against incompatible office holding "was designed to avoid the necessity for that choice."[59]

We therefore conclude that there are substantial questions of fact and law as to whether Keefer's position as Pacific Charter's Executive Director and his responsibilities as Trustee on the County Board of Education present him with the potential for a significant clash of duties and loyalties.[60]

### b. *There is a Substantial Legal Question Whether Education Code Section 1006 Precludes Keefer's Service as Trustee on the Sacramento County Board of Education While Employed by Pacific Charter.*

The application's second cause of action alleges that Keefer's employment with Pacific Charter renders him ineligible to occupy the office of a Trustee on the Sacramento County Board of Education under Education Code section 1006(a).  That statute provides that no "employee of a school district that is within the jurisdiction of the county board of education" may simultaneously serve on that county's board of education.[61]  As we have

---

county board of education); Cal. Code Regs., tit. 5, § 11968.5.3 (appeal of charter revocation to county board of education).

[56] Gov. Code, § 1099, subd. (a)(2), italics added.

[57] 98 Ops.Cal.Atty.Gen. 94, 98 (2015); 97 Ops.Cal.Atty.Gen. 50, 52 (2014); 93 Ops.Cal.Atty.Gen., *supra*, at p. 111; see also *Lacey*, *supra*, 44 Cal.App.5th at p. 820 & fn. 8, quoting with approval 93 Ops.Cal.Atty.Gen., *supra*, at p. 110.

[58] 67 Ops.Cal.Atty.Gen. 409, 414 (1984), quoting 3 McQuillin, Municipal Corporations (rev. ed. 1973) § 12.67, pp. 295-296; see also 105 Ops.Cal.Atty.Gen., *supra*, at p. 72.

[59] 67 Ops.Cal.Atty.Gen., *supra*, at p. 414.

[60] The parties also dispute whether the county board of education's supervision of the county superintendent of schools presents an additional potential for conflicting interests, but we need not address this additional issue in determining whether to grant the present application.  "Only one potential significant clash of duties or loyalties is necessary to make offices incompatible." (*Lacey*, *supra*, 44 Cal.App.5th at p. 819, citing 87 Ops.Cal.Atty.Gen. 153, 154 (2004); see also 75 Ops.Cal.Atty.Gen. 10, 12 (1992).)

[61] Ed. Code, § 1006, subd. (a).

11

explained, the purpose of section 1006(a) is to extend the common law rule against holding incompatible offices beyond its original application to two public offices, to also include a situation where one position is a public office and the other is a position of public employment.[62]

In Opinion No. 20-102, discussed above, we construed section 1006 to apply to employees of charter schools. We acknowledged that the text of section 1006 did not state expressly that its use of the term "school district" included charter schools. But after examining legislative history and the statute's purpose, we concluded that, when the Legislature authorized corporate charter schools, it expected the phrase "any employee of a school district" to include charter school employees. At that time, there would have been little reason for the Legislature to assume that charter school employees would be exempted from section 1006(a). Under the original enactment, charter schools—though operationally independent—were not legally separate from their chartering school districts.[63] Accordingly, the Legislature would reasonably have expected that charter school employees, just like their non-charter colleagues in the school district, would be subject to the conflict-of-interest restriction in section 1006(a). When the Legislature later authorized charter schools to be operated by a nonprofit public benefit corporation,[64] it did not exempt employees of those corporate charter schools from section 1006(a).

We reaffirm our conclusion in Opinion No. 20-102, although we acknowledge both Keefer's contrary views on the issue and the absence of controlling judicial precedent. In the context of the present quo warranto application, however, it is enough that there exists a substantial question of law as to whether Keefer occupies his position on the Sacramento County Board of Education in violation of Education Code section 1006(a), and that this question warrants a judicial resolution.[65] Here, we conclude there is.

---

[62] 104 Ops.Cal.Atty.Gen., *supra*, at p. 76, citing 69 Ops.Cal.Atty.Gen. 290, 291-292 (1986).

[63] 81 Ops.Cal.Atty.Gen. 140, 143 (1998) ("charter school remains a component part of the school district that created it").

[64] Stats. 1998, ch. 34, § 3; see now Ed. Code, § 47604, subd. (a).

[65] Keefer also asserts that applying Education Code section 1006 to him would contravene Education Code section 47610 the so-called "mega-waiver" provision of the Charter Schools Act. That section states that a "charter school shall comply with this part and all of the provisions set forth in its charter, but is otherwise exempt from the laws governing school districts" with specified exceptions, the enumeration of which does not include section 1006. But by its terms, and as the exceptions impliedly confirm, section 47610 applies to "charter schools" themselves, not to individual charter school

### 3. The Public Interest Would Be Served by Granting the Application

Generally, the existence of a substantial question of law or fact presents a sufficient "public purpose" to permit an action in quo warranto, absent countervailing circumstances.[66] Keefer alleges the existence of a number of such circumstances, but we do not find them persuasive.

As an initial matter, he objects that the applicants unduly delayed in challenging his qualifications to hold office, and that allowing them to proceed would encourage "gaming the system." Keefer acknowledges that Opinion No. 20-102 issued in late 2021, when his previous term of office on the County Board was ending. But he argues that he filed paperwork for re-election four months after our opinion issued, and that the applicants could have brought either a pre-election or a post-election challenge to his qualification, but that they did not do so. We received this application in September 2022, only a few months after Keefer's June election to another four-year term on the County Board.[67]

We have previously recognized that the "the defense of laches requires unreasonable delay in asserting an equitable right, plus either acquiescence of the plaintiff or prejudice to the defendant caused by the delay."[68] In our view, the applicants did not "unreasonably delay" in bringing their application when they did. Moreover, Keefer's current term as Trustee does not expire until June 2026. Both the strong public interest in a court settling Keefer's entitlement to hold office, and the novel question whether Education Code section 1006(a) applies to charter school employees, persuades us that any delay in filing of this application should not prevent the proposed lawsuit from being filed.[69]

Keefer also notes that an unsuccessful piece of legislation would have codified Opinion No. 20-102 insofar as it addressed the application of section 1006(a) to charter school executive directors, effective January 1, 2023, but would also have exempted Keefer because he was elected to the county board in 2022.[70] Keefer argues that,

---

employees. We accordingly do not construe section 47610 to exempt charter school employees from the disability imposed by Education Code section 1006(a).

[66] 105 Ops.Cal.Atty.Gen. 69, 74 (2022); see 86 Ops.Cal.Atty.Gen. 82, 85 (2003).

[67] Sacramento County Office of Education, https://www.scoe.net/divisions/board/ (as of Feb 27, 2024).

[68] 103 Ops.Cal.Atty.Gen., *supra*, at p. 6.

[69] See 105 Ops.Cal.Atty.Gen. 101, 109 (2022).

[70] See Assem. Bill No. 1652 (2021-2022 Reg. Sess.), § 1.

22-802

although the bill failed passage, it nevertheless "calls into question the public interest in seeking to remove him from office."[71]  We disagree.  It is a "well-established principle that failed legislation is of little value in determining the Legislature's original intent."[72]  Instructive on this point are the circumstances surrounding our Opinion No. 11-201, in which we noted the multiple failed legislative efforts to clarify whether corporate charter schools are subject to public-integrity statutes.[73]  We declined to infer from these failings a legislative opposition to extending California's public-integrity statutes to charter schools.[74]  Similarly, we decline to infer from Keefer's proffered failed bill any legislative intent concerning Education Code section 1006(a).  As the California Supreme Court has put it:  "At best, 'Legislative silence is a Delphic divination.'"[75]

We are satisfied that allowing the proposed suit in quo warranto will serve the public interest by (1) determining whether the positions of Pacific Charter Institute executive director and Sacramento County Board of Education Trustee are incompatible public offices, (2) determining whether Education Code section 1006(a) applies to employees of charter schools, and (3) by ensuring that public officials avoid conflicting loyalties in performing their public duties.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[71] Memorandum in Opposition, p. 31.

[72] *Frazier Nuts, Inc. v. American Ag Credit* (2006) 141 Cal.App.4th 1263, 1272, fn. 11.

[73] 101 Ops.Cal.Atty.Gen., *supra*, at pp. 95-96.

[74] *Id.*, at pp. 102-103.  As already discussed, the Legislature recently added Education Code section 47604.1, affirming our 2018 conclusion that the state's public integrity statutes apply to a nonprofit "entity managing a charter school."  (Stats. 2019, ch. 3, § 1.)

[75] *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 418.

22-802